BRUNER-IVORY HANDLE COMPANY *v.* YATES.

4-8459                                                        208 S. W. 2d 997

Opinion delivered March 1, 1948

*J. Ed. Morneau,* for appellant.

*John P. Vesey,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Arthur D. Yates, was employed by appellant, Bruner-Ivory Handle Company for seven years prior to June 9, 1942. On November 7, 1943, he filed a claim with the Workmen's Compensation Commission asserting that he had a com-

pensable disability, on account of bronchiectasis, which arose out of and in the course of his employment with the handle company.

After separate hearings before two referees and the full commission, the claim was referred to the Medical Board of the Workmen's Compensation Commission as provided in the compensation act (§ 14(c) (4) of Act 319 of 1939), there being a controversy on the question of whether or not appellee's condition was the result of an occupational disease or an occupational infection.

At a hearing before the medical board on August 14, 1944, appellee was referred to two Little Rock physicians who conducted clinical and X-ray examinations of appellee over a period of five days and reported their findings to the board.

On October 19, 1944, the medical board reported to the commission as follows: "After reviewing all the testimony in this case, including the reports of Drs. Cull and Fulmer of Little Rock, dated August 31, 1944, we are of the opinion that this man has a chronic maxillary sinusitis causing chronic bronchitis, and we are of the opinion that when the sinus infection is cleared this bronchial trouble will be entirely relieved, and that his present condition is not related to his occupation.

"Accordingly, the Medical Board finds that the claimant did not sustain an occupational disease or occupational infection arising out of and in the course of his employment."

On November 8, 1944, the commission rendered its opinion based on the medical board's findings and the claim for compensation was denied. Appellee then filed a petition for review of the decision of the commission in which specific objections to the findings and conclusions of the medical board were made under § 14(c) (7) of the compensation act.

Pursuant to this petition the matter was again heard by the commission on December 4, 1944, on the testimony of Dr. Cheairs, of the medical board, and Drs. Cull and

Fulmer, who conducted examinations of appellee at the request of the board. At the conclusion of this hearing the medical board refused to reconsider its former findings and the commission reaffirmed its decision of November 8, 1944. The commission found: "That any condition from which this claimant now suffers is not the result of an accidental injury or occupational disease or occupational infection that arose out of and in the course of his employment with the respondent employer and his claim for compensation is, therefore, denied."

On appeal, the circuit court found that the claim was subject to review on all questions, both of law and fact. The judgment recites: "That the claimant is totally and permanently disabled by reason of bronchiectasis, which was incurred by the claimant as a result of an occupational disease or occupational infection and which arose out of and in the course of his employment with the respondent employer." Compensation was awarded on a weekly basis as long as the disability existed, or until the sum of $7,000 had been paid to appellee.

Under § 25(b) of the compensation act we have repeatedly held that the findings of the commission on questions of fact will not be disturbed, if there is sufficient competent evidence to warrant the making of the award. Appellee readily concedes that the circuit court was without authority to overturn the award of the commission, if the procedure provided in this section is to be applied to the appeal of appellee from the award of the commission to the circuit court. However, it is earnestly insisted that the appeal to circuit court is governed by § 14(c) (7) of the compensation act. The last sentence of this sub-section reads: "Every decision by the commission that sets aside, reverses, affirms, or modifies a finding or conclusion by the medical board shall be subject to review by the courts, upon appeal, on all questions, whether of law or fact."

Assuming, without deciding, that the procedure outlined in the section relied on by appellee is applicable, as the circuit court found, and that the circuit court on appeal is authorized to review findings of fact made by

the commission on the medical question involved, we are then confronted with the question whether there is substantial evidence to sustain the circuit court's finding that appellee incurred an occupational disease or occupational infection which arose out of and in the course of his employment. Section 2(f) of the compensation act provides: " 'Injury' and 'Personal Injury' shall mean; Accidental injury or death arising out of and in the course of employment, and such occupational disease or occupational infection as arises naturally out of such employment or as naturally and unavoidably results from such accidental injury as hereinafter defined." Neither bronchiectasis nor sinusitis is listed as an occupational disease in the act.

It is undisputed that appellee became disabled on June 9, 1942, although there is some dispute as to the extent of such disability. Appellee worked in the "dipping room" of the factory where handles are dipped into a vat containing a lacquer solution. Appellee testified that the fumes and vapors from the lacquer solution caused his eyes to smart and a feeling of intoxication; that his general health was good until about three or four weeks prior to June 9, 1942, when he began to run a little temperature and lose weight. Upon the advice of Dr. Lile, appellee stopped work and was later advised by his doctor that he was totally disabled and suffering with bronchiectasis.

Dr. Lile first diagnosed the case as tuberculosis and advised appellee to go to the sanatorium at Booneville, Arkansas, for examination. Dr. Riley of the sanatorium reported that X-ray pictures showed evidence of chronic bronchitis, but he was unable to say whether appellee had bronchiectasis, and he found no evidence that the disability was occupational. Dr. Lile based his opinion that appellee had bronchiectasis largely on the report of Dr. Riley, and testified that appellee's condition was not caused by his work. A report from Dr. Buchanan is in the record which states that appellee was totally disabled from bronchiectasis on February 24, 1944, but no opinion is given as to whether the disability is occupational.

At the last hearing before the commission, Drs. Cull and Fulmer testified that appellee was suffering from a bronchial trouble which was secondary to, and caused by, a chronic sinus infection; that appellee's condition was not unusual and was not caused by his occupation; and that fumes from the lacquer solution would not cause bronchitis, nor sinusitis which is a bacterial infection. X-ray pictures made upon their examination of appellee in August, 1944, showed the bronchi entirely normal, but revealed a severe condition of sinusitis. In his testimony, Dr. Cull quoted at length from medical texts on the toxic effects of the solvents used in the lacquer solution and gave the following conclusion based on these authorities: "Personally I can find no evidence in studying this whatever that you could get a chronic sinus or bronchial condition from any such solvent as used here. That is my personal opinion. These particular ingredients are used widely in industry as solvents. If they are prone to produce pulmonary trouble it should be readily found, but I can't find it." Both physicians testified that a pre-existing nasal or chest infection would be temporarily aggravated by breathing the vapors from solvents used in the lacquer solution, but that the irritation would have no permanent effect on such infection.

The opinion of all the physicians who testified on the question was that there was no causal relation between appellee's disability and his employment. While the question is not free from difficulty, it is our considered opinion that there is a lack of substantial evidence to support the finding of the circuit court that appellee incurred an occupational disease or occupational infection which arose out of and in the course of his employment. The judgment of the circuit court is accordingly reversed, and the cause remanded with directions to reinstate the findings and order of the compensation commission.